Vicente J. ANDERSON, et al., Plaintiffs,

v.

Alberto Aleman ZUBIETA, Administrator, Panama Canal Commission, Defendant.

Civil Action No. 96–2832 SS.

United States District Court,
District of Columbia.

Aug. 22, 1997.

Richard Joseph Hirn, Washington, DC, for Plaintiffs.

Cynthia Ann Schnedar, U.S. Atty's Office, Washington, DC, for Defendant.

## MEMORANDUM OPINION

SPORKIN, District Judge.

Plaintiffs are 13 long-term employees of the Panama Canal Commission. They have brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, as amended, and the due process clause of the Fifth Amendment to the Constitution. This matter is now before the Court on parties' cross-motions for summary judgment. The Court heard argument on the motions on June 24, 1997. For the reasons stated below, the Court denies Plaintiffs' motion for summary judgment and grants Defendant's motion for summary judgment.

## FACTUAL BACKGROUND

In conjunction with the Panama Canal Treaty which returned the Canal to Panama in 1979, Congress amended U.S. immigration laws to make it easier for non-citizen employees of the PCC to become U.S. citizens. 8 U.S.C. § 1101(a)(27)(E)-(G). Panamanian-born Canal employees, residing in the Canal Zone, and their spouses and children, were eligible for "special migrant" status, making them permanent residents and eligible for naturalized citizenship. *Id.*

Plaintiffs are long-term, pre–1979, employees of the Panama Canal Commission and were hired locally, in the Canal Zone. With one exception, at the time they were hired, Plaintiffs were not U.S. citizens. Eleven of the thirteen Plaintiffs became U.S. citizens between 1987 and 1994, under the terms of the 1979 act. Plaintiff Richard Manning, who had served with the U.S. military in Vietnam, became a citizen in 1977. Plaintiff Boris Harley, who was born in the Canal Zone, was born a U.S. citizen because his

father is a U.S. Citizen. Harley's father failed to register Harley's birth at the U.S. Embassy and Harley did not do so himself until 1991. All Plaintiffs except Plaintiff Roberto Fabrega are of West Indian national origin. Fabrega is of Hispanic national origin.

### Tropical Differential

Historically, pursuant to the Panama Canal Act of 1912, the PCC paid U.S. citizen employees a 25 percent tropical differential to compensate them for the various sacrifices they made to work in the Canal Zone.[1] Those payments were not made to local-hire employees. In 1964, the differential was reduced to 15 percent.

In 1976, the PCC, by regulation, limited the differential to citizens who were recruited outside of the Canal Zone, because it determined that the financial incentive was no longer necessary to recruit locally. The Agency grandfathered in employees who had been continuously employed since July 3, 1976 and who were previously receiving the differential. Because 12 of the 13 Plaintiffs were not U.S. citizens in 1976, and the 13th, Plaintiff Harley, was not known to be a U.S. citizen, they had not previously been receiving the differential, and were not grandfathered in.

In 1979, Congress passed legislation in conjunction with the signing of Panama Canal treaty. Under that legislation, employees hired after October 1, 1979, regardless of citizenship, were only to receive the differential if they were hired outside of the Canal Zone. The Act allowed, *but did not require*, the PCC to pay a differential to employees hired prior to October 1, 1979, without regard to citizenship *or* place of employment. The PCC chose to retain its 1976 policy, with the effect that employees who had not received the differential before July 3, 1976 still did not get the differential.

### Equity Package

Prior to 1977, the United States operated commissary and retail stores in the Canal Zone. In an effort to boost the Panamanian economy, the United States, as part of the Panama Canal Treaty of 1977, agreed to close the stores. As a transition measure, Canal employees who were U.S. citizens were allowed to use U.S. military commissaries and exchanges ("C & E") for a five-year period ending September 30, 1984. After that time, the Canal employees' only option was to shop in local Panamanian stores.

To offset the cost of living increases caused by the 1984 loss of C & E services, Congress authorized, but did not mandate, a cost of living allowance ("COLA"), beginning October 1, 1984. 22 U.S.C. § 3646. The allowance could be paid, at the discretion of the Agency, to U.S. citizens who were employees as of September 30, 1979, or any person who was recruited outside of Panama after September 30, 1979. *Id.*

Rather than offer a direct cash payment to employees, the PCC provides the COLA in the form of an "equity package." It consisted of free rent and electricity in PCC housing, additional home leave, and educational travel benefits for dependents attending college in the United States. Initially, such benefits were paid to all U.S. citizen employees who had been employed before October 1, 1984, regardless of whether they had received the C & E benefits before the 1984 cutoff. The result of this policy was that 23 employees, including four of the Plaintiffs, who had never previously received the C & E benefits, started to receive the equity package when they became naturalized U.S. citizens.

On December 29, 1989, the PCC changed that policy. Reasoning that the equity package was meant only to compensate employees who had lost C & E benefits, PCC cut off

---

1. In 1975, the General Accounting Office concluded that the purpose of the differential was to compensate non-local hires for their willingness to:

(1) leave [their] home environment in the United States; (2) live in a geographically remote, confined, and regimented atmosphere; (3) cope with housekeeping inconveniences and deficiencies in food supplies, together with the general health hazards existing in a hot humid climate; (4) assume the additional costs for necessary periodic travel to the United States and for higher education in the United States for [their] children; and (5) forego ownership of [their] own home[s].

Defendants' Ex. 24 at 6 (citing 1975 GAO study).

the equity package for those who had never received C & E benefits.[2] Plaintiff Manning continues to receive the equity package because he became a citizen in 1977 and thus was receiving C & E benefits on the 1984 cutoff date. The four Plaintiffs who became citizens in the 1984–1989 time frame lost the equity package as a result of the policy change. The remaining Plaintiffs never received the COLA because they became citizens (or, in the case of Harley, was first recognized as a citizen) after December 29, 1989.

### Travel and Home Leave Benefits

Canal employees who were pre-Treaty citizens also received certain other benefits. These included vacation leave travel to the United States, additional home leave and 40 hours paid travel time for trips home. These benefits were not paid to employees who were not citizens before the 1979 treaty. Several Plaintiffs have challenged this policy.

### Plaintiffs' Complaint

Plaintiffs claim that the failure of Defendant, in almost all circumstances, to pay them the tropical differential, equity package, and travel and home leave benefits is discrimination in violation of Title VII, on the basis of national origin and race. They also claim that the application of the policy discriminates between naturalized and natural-born citizens, in violation of the Due Process clause of the Fifth Amendment. Defendant contends, *inter alia*, that in light of major reforms in the governance of the Canal Zone, over the years, Congress and the PCC have made appropriate changes to the Canal employee benefit packages. When changes were made, in an effort to cushion the blow, Congress and the PCC have established "grandfather" policies. Defendant claims that for legitimate reasons, unrelated to national origin, race or naturalized citizenship status, Plaintiffs generally do not qualify either under the terms of the new benefit plans, or under the various grandfather provisions.

### ANALYSIS & DECISION

#### Title VII claims

The Supreme Court held in *Espinoza v. Farah Manufacturing Company, Inc.*, 414 U.S. 86, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973), that although Title VII protects against discrimination on the basis of national origin, it does not offer protection from discrimination on the basis of citizenship. *Id.* at 90–91, 94 S.Ct. at 337–38. Although the Plaintiffs' attempt to characterize it otherwise, this Court concludes that the basis of their Title VII complaint in this case is "citizenship."

Plaintiffs are being denied certain benefits because they do not qualify under the applicable law or relevant "grandfather" clauses. The grandfather clauses offer benefits to Canal employees who received the tropical differential, and travel and home leave benefits before 1976 or the C & E benefits before the 1984 cut-off. The Plaintiffs did not receive those benefits because they were not, or were not known to be, U.S. citizens in the relevant time frame.

It is not disputed that the relevant statutes and regulations establishing the pre-treaty benefits specifically differentiated between Panamanian citizens and U.S. citizens. The reason for this, as the GAO found, was to compensate non-local hires for the various sacrifices they made to leave their homes and come to the Canal Zone. *See* note 1, *supra.* That was not, and is not, illegal. The fact that Plaintiffs are *now* U.S. citizens, does not entitle them to receive benefits they would have earned had they been U.S. citizens at an earlier time. They were legally denied the benefits before the treaty, and therefore generally do not qualify under the post-treaty grandfather clauses. They are *not* ineligible because they are naturalized citizens or of West Indian national origin; they are ineligible because, with the signing of the Treaty, the United States in some cases de-

---

**2.** The exception is those employees hired *outside* of Panama after September 30, 1979. Plaintiffs point out that these employees *never* received C & E benefits, but *do* receive the equity package. As Defendant notes, these employees receive the benefits for a different reason. They are being compensated for the loss of access to goods and services they received before they came to Panama. They can be distinguished from local hires, who never received the C & E benefits and have always had to pay Panamanian prices, for Panamanian goods, from a Panamanian wage.

cided, and in some cases was obliged, to stop giving certain benefits.[3]

■ Plaintiffs try to characterize their case as a national origin and race discrimination claim by alleging that the Defendant's action in enacting the various grandfather provisions reflects disparate treatment and has a disparate impact. The Court rejects these claims. Title VII protects, *inter alia,* against "discriminat[ion] ... with respect to ... compensation ... or privileges of employment, *because of* [an] individual's race ... or national origin." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). Where differentiation took place in this case, it was "because of" citizenship, not because of membership in a Title VII protected class.[4]

Plaintiffs also claim that the regulations had a "disparate impact" on employees of West Indian origin. While this may be true as a matter of fact, the Court finds no evidence of unlawful discrimination. The Defendant's actions in promulgating and enforcing the regulations were taken pursuant to statutory authority. That certain persons, or groups of persons, may have been less advantageously affected than others is attributable to Congressional policies. There is no evidence that the Defendant acted with any unlawful discriminatory purpose.

Because the Plaintiffs have not established that they were subject to discrimination pursuant to Title VII, the Court will grant Defendant's motion for summary judgment on Plaintiffs' Title VII complaint.

*Fifth Amendment Claim*

■ For similar reasons, the Court rejects Plaintiffs' Fifth Amendment Due Process claim. Plaintiffs cite *Schneider v. Rusk,* 377 U.S. 163, 165–66, 84 S.Ct. 1187, 1188–89, 12 L.Ed.2d 218 (1964) for the proposition that a government employer may not discriminate between naturalized and natural-born citizens. There is no evidence that such discrimination occurred in this case. Employees who were U.S. citizens in the relevant time frame are eligible for benefits, *regardless whether they were naturalized or natural-born.*[5] The grandfather clauses look to the time frame of citizenship, not the type of citizenship. The Court will grant Defendant's motion for summary judgment on Plaintiffs' Fifth Amendment complaint.

### CONCLUSION

Based on the undisputed facts, this Court cannot conclude that Plaintiffs have established discrimination in violation of Title VII or the due process clause of the Fifth Amendment. Accordingly, the Court will deny Plaintiffs' motion for summary judgment, grant Defendant's motion for summary judgment and dismiss this case.

---

**3.** Plaintiffs make much of the fact that in 1989, certain equity benefits, that had been received by some of the Plaintiffs in the 1984–89 period, were suddenly restricted to pre–1984 U.S. citizens. In fact, the post–1984 citizens who received those benefits were essentially receiving a windfall. The equitable compensation was intended to replace a benefit—the C & Es—that only pre–1984 citizen employees had been eligible to receive. Plaintiffs' claim that the cutoff of these benefits was discriminatory is refuted by the fact that Plaintiff Manning, who was a citizen before 1984, still continues to receive the equity package.

**4.** The factual background provided in the parties' briefs seems to indicate that the original decision not to give the various benefits to Panamanian citizens was made by *Congress* through the Panama Canal Act of 1912. Defendant's Cross–Motion for Summary Judgment at 3. More recently, in creating the 1984 COLA program, Congress once again distinguished between citizens and non-citizens. 22 U.S.C. § 3646.

**5.** The fact that there are a large number of employees, including most of Plaintiffs, who have been naturalized since 1979, is a direct result of the special legislation passed by Congress in connection with the Canal treaty. *See* 8 U.S.C. § 1101(a)(27)(E)-(G). When considering the benefits Plaintiffs did and did not receive, one cannot forget they have received what many around the world might consider the ultimate benefit—United States citizenship.